UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                  Case No. 22-CR-108

WILLIAM A. MCDONALD,

        Defendant.

## PLEA AGREEMENT

1.      The United States of America, by its attorneys, Gregory J. Haanstad United States Attorney for the Eastern District of Wisconsin, and Christopher Ladwig and Philip Kovoor, Assistant United States Attorneys, and Nikhil Ramnaney, U.S. Department of Justice Trial Attorney, and the defendant, William A. McDonald, individually and by attorneys Gabriela Leija and Dennise Moreno, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

## CHARGES

2.      The defendant has been charged in a two-count indictment, which alleges violations of Title 42, United States Code, Section 3631(a).

3.      The defendant has read and fully understands the charges contained in the indictment. He fully understands the nature and elements of the crimes with which he has been charged, and those charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to plead guilty to the following counts set forth in full as follows:

## COUNT ONE

**THE GRAND JURY CHARGES THAT:**

1. Between on or about March 6, 2021, and on or about March 17, 2021, in the State and Eastern District of Wisconsin,

**WILLIAM A. MCDONALD**

did willfully injure, intimidate, and interfere with T.F., and attempt to willfully injure, intimidate, and interfere with T.F., by force and threat of force, because of T.F.'s race and color and because T.F. was renting and occupying a dwelling.

2. The offense involved the use, attempted use, and threatened use of a dangerous weapon.

All in violation of Title 42, United States Code, Section 3631(a).

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

Between on or about April 4, 2022, and on or about April 7, 2022, in the State and Eastern District of Wisconsin,

**WILLIAM A. MCDONALD**

did willfully injure, intimidate, and interfere with S.J., and attempt to willfully injure, intimidate, and interfere with S.J., by force and threat of force, because of S.J.'s race and color and because S.J. was renting and occupying a dwelling.

In violation of Title 42, United States Code, Section 3631(a).

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offenses described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the facts in Attachment A beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt. This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, these offenses.

## PENALTIES

6. The parties understand and agree that the offenses to which the defendant will enter a plea of guilty carry the following terms of imprisonment, supervised release, fine, and special assessment for each count: Count One: up to 10 years' imprisonment, up to 3 years of supervised release, up to a $250,000 fine, and a $100 special assessment; and Count Two: up to 1 year imprisonment, up to 1 year of supervised release, up to a $100,000 fine, and a $25 special assessment. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 28 of this agreement.

7. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## ELEMENTS

8. The parties understand and agree that in order to sustain the charge of Criminal Interference with the Right to Fair Housing as set forth in Counts One and Two, the government must prove each of the following propositions beyond a reasonable doubt:

   (1) The defendant used or threatened force; and
   (2) The defendant willfully injured, intimidated, or interfered with, or attempted to injure, intimidate, or interfere with, a victim; and
   (3) Because of the victim's race, color, religion, sex, handicap, familial status, or national origin; and
   (4) Because the victim was occupying or renting a dwelling.

For the felony offense in Count One, the government must also prove that the "acts include the use, attempted use, or threatened use of a dangerous weapon." 42 U.S.C. § 3631.

3

## SENTENCING PROVISIONS

9. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

10. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

11. The defendant acknowledges and agrees that his attorney have discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

12. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

### Sentencing Guidelines Calculations

13. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

4

### Relevant Conduct

14. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which the defendant is pleading guilty.

### Base Offense Level

15. The parties agree to recommend to the sentencing court that the applicable base offense level for the offenses charged in Counts One and Two is 12 under Sentencing Guidelines Manual §§ 2H1.1 and 2A6.1.

### Specific Offense Characteristics

16. The parties acknowledge and understand that the government will recommend to the sentencing court that a 6-level increase for any conduct evidencing an intent to carry out such threat under Sentencing Guidelines Manual § 2A6.1(b)(1) is applicable to the offense charged in Count One. The parties acknowledge and understand that the defendant will not join in this recommendation.

### Hate Crime Motivation

17. The parties agree to recommend to the sentencing court that a 3-level increase for a hate crime motivation under Sentencing Guidelines Manual § 3A1.1 is applicable to the offenses charged in Counts One and Two.

### Acceptance of Responsibility

18. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease

5

as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

### Sentencing Recommendations

19. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

20. Both parties reserve the right to inform the court regarding any and all factors pertinent to the determination of the sentencing guideline range; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

21. The government agrees to recommend a sentence between 30 to 36 months.

### Court's Determinations at Sentencing

22. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraphs 6 and 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

23. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

### FINANCIAL MATTERS

24. The defendant acknowledges and understands that any and all financial obligations

imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

25. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, upon request of FLU whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

### Fine

26. The parties agree to recommend no fine.

### Special Assessment

27. The defendant agrees to pay the special assessment in the amount of $125 prior to or at the time of sentencing.

### Restitution

28. The defendant agrees to pay restitution, which will be determined prior to sentencing. The defendant understands that because restitution for the offenses is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant

understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## DEFENDANT'S WAIVER OF RIGHTS

29. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

- a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

- b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

- c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

- d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

- e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

30. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant

8

further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

31. The defendant acknowledges and understands that he will be adjudicated guilty of the offenses to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

32. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## **GENERAL MATTERS**

33. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

34. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

35. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

9

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

36. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing.

## VOLUNTARINESS OF DEFENDANT'S PLEA

37. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorneys have reviewed every part of this agreement with me and have advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorneys, and I am satisfied that my attorneys have provided effective assistance of counsel.

Date: 1-25-23

_____
WILLIAM A. MCDONALD
Defendant

We are the defendant's attorneys. We carefully have reviewed every part of this agreement with the defendant. To our knowledge, our client's decision to enter into this agreement is an informed and voluntary one.

Date: 2/9/23

_____
GABRIELA LEIJA
DENNIS MORENO
Attorneys for Defendant

For the United States of America:

Date: 2/13/23

_____
GREGORY J. HAANSTAD
United States Attorney

Date: 2/13/23

_____
CHRISTOPHER LADWIG
PHILIP KOVOOR
Assistant United States Attorney

Date: 2/13/23

_____
NIKHIL RAMNANEY
U.S. Department of Justice Trial Attorney

12

# ATTACHMENT A

1. In 2021, the FBI began an investigation into allegations of use of force or threats to use force to injure, intimidate, or interfere with victims' housing rights because of their race, color, or national origin, in violation of 42 U.S.C. § 3631, all in the Eastern District of Wisconsin.

2. T.F. is African American and resided at an apartment complex located at 14XX South 79th Street West Allis, Wisconsin. On March 7, 2021, T.F. parked her vehicle on 79th Street, in front of her apartment complex. On March 7, 2021, T.F. went out to her vehicle and saw that all four tires of her vehicle had been slashed.

3. On March 8, 2021, T.F. returned to her vehicle to find the vehicle's windshield had been broken. There was also a note sitting on the windshield. The note contained the following language written on stationary from a chain restaurant ("chain restaurant"): "BETTER WATCH WHO THE FUCK YOU TALK SHIT TO UGLY FAT NIGGER BITCH! I KNOW WHERE YOU LIVE. IF I SEE YOU AGAIN, I'LL SLASH YOUR FUCKING THROAT. GET THE FUCK BACK TO THE NORTHSIDE WHERE YOU BELONG FUCKING NIGGER!" The top of the stationary has the following printing on it: "Property of [chain restaurant]. Confidential Information. Do not duplicate or distribute outside of this company."

4. On March 17, 2021, T.F. found another note on her vehicle. The vehicle was parked outside of her apartment complex on South 79th Street. The note was written on identical stationary from the chain restaurant and contained the following language: "Your last warning to get the fuck outta my neighborhood before I slash your shit again. No problem with BLACK people. Only problems with ghetto punk NIGGERS like you!" T.F.'s front two tires were once again slashed. The bottom of the stationary had the following printing on it: "Property of [chain restaurant]. Confidential Information. Do not duplicate or distribute outside of this company."

5. On or about April 2, 2022, S.J., an African American woman, who has two African American sons (VICTIMS 8 and 9), moved into the same apartment complex as WILLIAM MCDONALD. On April 4, 2022, S.J. found the word "NIGGER" written in black pen on the front door of her apartment. S.J. also found a note had been placed under her apartment door that stated "get the fuck out niggers. Your NOT wanted here." On April 7, 2022, S.J. found a second note under her apartment door that stated: "stay here + see what the fuck happens nigger." S.J. stated that the front and back doors of the apartment complex are always locked, and a key is needed for entry, unless you are buzzed in. MCDONALD lives at 17XX South 84th Street, Apartment XX, West Allis, Wisconsin ("WILLIAM MCDONALD's apartment")—the same apartment building. Due to the hateful notes and the writing on the apartment door, VICTIM 8 and VICTIM 9 are no longer living with S.J. at her apartment out of fear for their safety.

6. On March 15, 2022, while reviewing live video surveillance of the area near 87XX West Mitchell Street, FBI agents identified a blue four door sedan that appeared similar to the Suspect Vehicle, drive east, past 87XX West Mitchell Street. Using the video surveillance recording, FBI agents were able to attain a still frame image of the Suspect Vehicle. On March 15, 2022, FBI agents shared the photo of the Suspect Vehicle with the West Allis Police Department, and requested they attempt to identify the license plate of any vehicles in the area that appeared similar.

7. On March 15, 2022, the West Allis Police Department provided the FBI with information pertaining to a vehicle they had identified in the area that matched the still image of the Suspect Vehicle, provided to them by the FBI. This vehicle was a blue 2007 Ford Five Hundred, four door sedan, with Wisconsin license plate ALB-7712. The blue 2007 Ford Five Hundred is registered to owner, WILLIAM A. MCDONALD. The blue 2007 Ford Five Hundred was observed parked and unoccupied on the south side of West Mitchell Street near WILLIAM MCDONALD's apartment. The blue 2007 Ford Five Hundred had a registered city parking permit, which was

13

procured on January 3, 2022. Parking records indicate that the blue 2007 Ford Five Hundred was designated to be parked at the registered address of WILLIAM MCDONALD's apartment.

8. The victims identified all lived under an approximately one-mile radius of each other in West Allis, Wisconsin. Each of these victims received notes on their vehicles or at their homes containing hateful and threatening language referencing their race. Each vehicle and home were damaged at the time the notes were left.

9. WILLIAM MCDONALD's apartment is located within the same city, West Allis, Wisconsin, as all the identified victims. According to Google Maps, WILLIAM MCDONALD's apartment is located approximately 0.7 miles from T.F.'s previous residence and in the same building as S.J.'s residence. The T.F.'s vehicle was parked on a public street in close proximity to the victim's residence. As a result of receiving the hate notes, S.J. and T.F. moved out of their residences and out of the town of West Allis. S.J. and T.F. stated that their sole reason for moving was due to the hateful activity, and prior to the hateful activity, the victims were all happily living in West Allis, and had no desire to move.

10. FBI agents reviewed the still image of the Suspect Vehicle and compared it to images taken by the West Allis Police Department of the blue 2007 Ford Five Hundred. The blue 2007 Ford Five Hundred has a bumper sticker on the upper driver's side trunk. The still image of the Suspect Vehicle depicts a square outline corresponding in size, shape, and location on the upper driver's side trunk in the same location as the blue 2007 Ford Five Hundred's bumper sticker. Additionally, the blue 2007 Ford Five Hundred has a circular West Allis parking pass affixed to the vehicle between the driver side window and rear driver's side passenger seat window. The Suspect Vehicle image also depicts a circular outline corresponding in size, shape, and location with the blue 2007 Ford Five Hundred's parking pass.

11. According to information provided by the Wisconsin Department of Transportation,

14

the blue 2007 Ford Five Hundred is registered to MCDONALD and the associated registration address is WILLIAM MCDONALD's apartment.

12. A criminal history records check for MCDONALD showed that in 2003, MCDONALD was arrested for keying the vehicle belonging to his ex-girlfriend's new boyfriend. MCDONALD was also listed as a suspect in damaging the windshields on vehicles at a car dealership he worked at in 2018.

13. The criminal history records also identified WILLIAM MCDONALD's driver's license as having been issued on November 21, 2019, with an expiration date on November 21, 2027. WILLIAM MCDONALD's driver's license address was updated on September 26, 2021 to WILLIAM MCDONALD's apartment.

14. According to information provided by the Wisconsin Department of Workforce Development, MCDONALD worked at the chain restaurant in 2019. According to information provided by the chain restaurant, notebook stationary that has the disclaimer found on the two notes left on T.F.'s vehicle is not available to the public and is only available to someone who worked at the chain restaurant.

15. On March 18, 2022, at approximately 7:33 a.m., the West Allis Police Department conducted a vehicle stop on WILLIAM MCDONALD for not signaling on a turn and not wearing a seat belt. WILLIAM MCDONALD was issued a citation. The West Allis Police Department recorded WILLIAM MCDONALD's vehicle stop via body camera and both audio and video were captured. FBI agents reviewed the body camera footage. WILLIAM MCDONALD was driving the blue 2007 Ford Five Hundred and provided paperwork to the West Allis Police Department that listed the blue 2007 Ford Five Hundred as being registered to WILLIAM MCDONALD. WILLIAM MCDONALD provided his address as WILLIAM MCDONALD's apartment. Additionally, WILLIAM MCDONALD's vehicle was pulled over across the street from the WILLIAM

MCDONALD's apartment, and when WILLIAM MCDONALD was asked where he lived, WILLIAM MCDONALD pointed to the WILLIAM MCDONALD's apartment. According to information provided by the West Allis Police Department, during the vehicle stop of WILLIAM MCDONALD, West Allis Police observed a baseball bat and a large sized rock in his passenger seat.

16. During the vehicle stop, a West Allis police officer asked WILLIAM MCDONALD to sign his name and write down his e-mail address on the citation. WILLIAM MCDONALD signed his name and wrote down his e-mail address. WILLIAM MCDONALD's handwriting in his e-mail address is the same handwriting in the six hate notes, specifically the lowercase letters "a" and "g", which are very distinct. The West Allis police officer asked MCDONALD to provide his telephone number, and WILLIAM MCDONALD verbally provided his telephone number.

17. On or about April 11, 2022, a United States Magistrate Judge of the Eastern District of Wisconsin issued a warrant authorizing the search of WILLIAM MCDONALD's residence, vehicle, and person.

18. On April 19, 2022, the FBI executed the search warrant at WILLLIAM MCDONALD's apartment. Case agents stopped WILLIAM MCDONALD as he was approaching his blue 2007 Ford Five Hundred. WILLIAM MCDONALD acknowledged that the blue 2007 Ford Five Hundred belonged to him and indicated that he did not know of anyone else who drove his vehicle. He also admitted to removing the bumper sticker from the vehicle. He denied writing any of the hate notes. WILLIAM MCDONALD provided the keys to the blue 2007 Ford Five Hundred and his apartment.

19. Inside of WILLIAM MCDONALD's vehicle, case agents found two screwdrivers, a baseball bat, and a handwritten note in a plastic sandwich bag, which stated in substance: "Drive like a stupid ghetto fuckin nigger in <u>MY</u> neighborhood. This is what happens bitch. I'm watching all you fuckin monkeys around here. Get the fuck back to the northside ghetto where you belong. Next time

16

it will be your windshield you piece of shit fucking nigger. TEST ME!" The handwriting on this note was consistent with the handwriting on the other hate notes, and the plastic sandwich bag was consistent with some of other notes, in that the sandwich bag had a green zip top.

20. Inside of the apartment, agents found three jars of marijuana, a cigar box, a digital scale, and a box of plastic sandwich bags consistent with the plastic bags recovered from the some of the victims' vehicles.

21. During an interview, WILLIAM MCDONALD stated in substance: "So I'm getting arrested for a note that you found in my car?"